UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-cv-20715-ALTMAN

PAVEL LEIVA,

    *Petitioner*,

v.

WARDEN, KROME SERVICE
PROCESSING CENTER, *et al.*,

    *Respondents.*

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The Petitioner alleges that the Respondents failed to follow their own regulations when they revoked his Order of Supervision ("OSUP"). *See generally* Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1]. Specifically, the Petitioner alleges that Immigration and Customs Enforcement ("ICE") officers failed to give him "a prompt informal interview affording him an opportunity to respond" to the reasons for his OSUP revocation. *Id.* ¶ 49. He also alleges that "the government bears the burden of showing that there is a substantial likelihood that a person will be imminently removed before his OSUP may be revoked." *Id.* ¶ 28. We held a hearing to discuss the Petition on March 25, 2026. *See* Paperless Minute Entry Dated March 25, 2026 [ECF No. 20]. After careful review, we **DENY** the Petition.

### BACKGROUND

In September 2021, "immigration officers encountered Petitioner at the Cedar Hill Correctional Facility in Texas, where Petitioner was serving a sentence for criminal violations," and served him with a "Notice to Appear" under the Immigration and Nationality Act ("INA") § 240. Response to Petition for Writ of Habeas Corpus (the "Response") [ECF No. 12] at 4 (citing Notice

to Appear [ECF No. 12-2]). On October 20, 2021, an immigration judge entered a Removal Order against the Petitioner, finding that he was removable under INA § 237(a)(2)(A)(iii). *See* Removal Order [ECF No. 12-4] at 1–2; *see also* Petition ¶ 7 ("[The Petitioner] was ordered removed on October 20, 2021, after serving [a prison sentence] for a conviction for trafficking in counterfeit devices."). Still, the Petitioner was released under an OSUP pursuant to 8 C.F.R. § 241.4. *See* Order of Supervision [ECF No. 12-6].

On December 30, 2025, during an OSUP check-in, ICE "revoked Petitioner's OSUP and re-detained him without prior notice[.]" Petition ¶ 2; *see also* Response at 2 ("On December 30, 2025, ICE revoked Petitioner's OSUP and took him into custody for the purpose of executing his removal."). During this encounter, ICE provided the Petitioner with a "Notice of Revocation of Release," informing him that his OSUP was being revoked under 8 C.F.R. § 241.4(l)(2)(i)–(iv) because ICE had determined that it was now "appropriate to enforce [his] removal order[.]" Notice of Revocation of Release [ECF No. 12-10] at 1. During this encounter, the Respondents tell us that "an informal interview was conducted," and the Petitioner was "taken into ICE custody." Declaration of Deportation Officer Ricardo Herrero ("Herrero Decl.") [ECF No. 12-11] ¶ 19.[1] ICE is currently "in the process of effectuating Petitioner's removal to Mexico." *Id.* ¶ 21. The Petitioner now seeks habeas relief.

---

[1] The Petitioner disputes ICE's claim that he was afforded an informal interview after his OSUP was revoked. *See* Affidavit of Pavel Leiva [ECF No. 15-1] ¶ 3 ("I never had any formal or informal interview and no one advised me why my supervision was being revoked."). To address this factual discrepancy, we held an evidentiary hearing at which Deportation Officer John OBryan testified (under oath) that he conducted an informal interview with the Petitioner and advised him of the reason for the revocation. *See generally* Paperless Minute Entry Dated March 25, 2026. We found Deportation Officer OBryan's testimony credible and find, as a matter of fact, that the Petitioner received his interview on December 30, 2025. *See United States v. Ramos-Colin*, 426 F. App'x 874, 875 (11th Cir. 2011) ("Credibility determinations are factual findings within the province of the district court.").

#### THE LAW

Section 2241 permits district courts to grant relief to petitioners held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to deportation proceedings are cognizable under 28 U.S.C. § 2241." *Orozco v. U.S. Immigr. & Naturalization Serv.*, 911 F.2d 539, 541 (11th Cir. 1990) (cleaned up).

#### ANALYSIS

### I.      Jurisdiction

As a threshold matter, the Respondent challenges our jurisdiction over the Petition. *See* Response at 7 ("[T]he Petition here should be dismissed for lack of jurisdiction."). We thus begin by determining whether Congress has deprived federal courts of reviewing claims like the Petitioner's. *Hain Celestial Grp., Inc. v. Palmquist*, 607 U. S. ___, ___ (2026) (slip op., at 1) ("Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear."). We find that it has not.

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Because "§ 1252(g) does not cover the universe of deportation claims," however, "only claims that arise from one of the covered actions are excluded . . . by this provision." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quotation marks omitted); *see also ibid.* ("It is not a shorthand way of referring to all claims arising from deportation proceedings." (cleaned up)). The Supreme Court has thus cautioned against construing § 1252(g) "broadly" and has made clear that the provision bars only those claims that "directly relate" to the processes of commencing proceedings, adjudicating cases, and executing removal orders. *Ibid.* So, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United*

*States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020); *see also DHS v. Regents of the Univ. of Ca.*, 591 U.S. 1, 19 (2020) ("We have previously rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (quotation marks omitted)); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) ("[T]he phrase 'arising from' is not infinitely elastic" and so "does not reach claims that are independent of, or wholly collateral to, the removal process, or that bear only a remote or attenuated connection to the removal of an alien." (cleaned up)). But "that does not give us license to ignore the plain meaning of the text." *Highpoint Tower Tech. Inc. v. Comm'r of Internal Revenue*, 931 F.3d 1050, 1060 n.8 (11th Cir. 2019).

Our Petitioner isn't challenging the Respondent's decision to execute his removal. Rather, he's challenging (1) the lawfulness of his immigration-related detention and (2) ICE's alleged failure to adhere to the applicable regulations when revoking his OSUP. And while Section 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). We're thus free to hear the Petitioner's claims regarding the Respondents' adherence to their internal regulations *and* the legality of his detention.[2]

## II.    Merits

Having established that we have jurisdiction over the Petition, we turn to the merits of the Petitioner's claims. He asserts five grounds for relief, which we'll address in turn. *First*, he argues that

---

[2] Other judges in our Circuit have likewise determined that we have jurisdiction over similar claims. *See, e.g.*, *Barrios v. Ripa*, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (Gayles, J.) ("[T]he Court does have jurisdiction to adjudicate whether Respondents complied with their own OSUP revocation procedures."); *Maryanovsky v. Ripa, et. al.*, 2026 WL 496778, at *3 (M.D. Fla. Feb. 23, 2026) (Howard, J.) (same); *Banega v. Warden of Soft Side S. Facility*, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026) (Steele, J.) (same). And the Supreme Court has made clear that § 2241 "confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention." *Zadvydas*, 533 U.S. at 687.

4

his current detention violates his *substantive* due-process rights under the Fifth Amendment because the "Respondents have failed to meet their burden of showing that there is a substantial likelihood that Petitioner's removal is imminent. In fact, they have failed to provide Petitioner with a hearing or interview or, indeed, any information regarding the reason for his re-detention." Petition ¶ 29. This contention is meritless for two reasons: *One*, under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Petitioner's post-removal order detention is "presumptively reasonable" for a period of six months. The Respondents thus needn't show that there's a substantial likelihood that the Petitioner's removal is imminent until that six-month clock has run. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[T]o state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The Petitioner was detained on December 30, 2025, so his post-removal order of detention will remain presumptively reasonable until June 30, 2026. *Two*, as discussed above, *see supra* n.1, the Petitioner *did* receive an informal interview under 8 C.F.R. § 241.4(l)(3) after his OSUP was revoked—and that's all the Respondents were required to offer him.

 *Second*, the Petitioner contends that his detention violates his *procedural* due-process rights under the Fifth Amendment because "[t]here were no material changes in the Petitioner's circumstances which justified his re-detention in 2026, more than four years after his initial release from custody, nor did he receive notice, hearing, or even reasons from ICE to justify his re-detention." Petition ¶ 35. But the Respondents weren't required to show any material changes in the Petitioner's circumstances to justify his re-detention. ICE may revoke an alien's OSUP "in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that

5

release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). When they do so, they must afford the alien "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(l)(1). There's thus no requirement—whether regulatory or statutory—that ICE determine that the alien's circumstances have changed before it can revoke an OSUP.

*Finally*, the Petitioner asserts claims for violations of the INA, the *Accardi* doctrine, and the Administrative Procedure Act, alleging that ICE failed to adhere to relevant regulations when it revoked the Petitioner's OSUP. *See* Petition ¶¶ 36–53. But, as we've said, ICE complied with the procedural requirements outlined in 8 C.F.R. § 241.4, and the Petitioner's claim that more was required is meritless.

### Conclusion

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

2. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on March 29, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

6